IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-1143-DII |
| ROKU, INC., | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is a motion to transfer to the Northern District of California filed by Defendant Roku, Inc. ("Roku"). (Dkt. 19). Plaintiff Anonymous Media Research Holdings, LLC ("AMR") filed a response in opposition, (Dkt. 56; *see also* Sealed Version, Dkt. 57-1), and Roku filed a reply, (Dkt. 60). Also before the Court is AMR's Motion to Strike Untimely Evidence and Arguments in Defendant Roku Inc's Reply in Support of its Motion to Transfer. (Dkt. 61). Roku filed a response in opposition, (Dkt. 62), and AMR filed a reply, (Dkt. 63; *see also* Sealed Version, Dkt. 64-1). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion to strike should be denied and the motion to transfer should be granted.

## I. BACKGROUND

AMR filed its complaint on September 22, 2023. (Compl., Dkt. 1). AMR alleges that Roku's automatic content recognition ("ACR") technology, which it acquired from Nielsen in 2021, infringes six of its patents: U.S. Patent Nos. 8,510,768; 10,719,848; 8,756,622; 10,719,849; 8,296,791; and 10,572,896 (collectively, the "Asserted Patents"). (*Id.* at 1, 6). The Asserted Patents cover "systems and methods for processing raw 'dirty' data from ACR technology into clean media measurement results that are commercially useful for targeted advertising." (Transfer Resp., Dkt. 56, at 2–3). On December 1, 2023, Roku filed an answer and twelve counterclaims. (Dkt. 15). On

1

December 22, 2023, AMR answered Roku's counterclaims. (Dkt. 18). On January 8, 2024, Roku filed an opposed motion to transfer, arguing that this Court should transfer the case to the Northern District of California (the "NDCA"). (Mot. Transfer, Dkt. 19). Roku argues that the NDCA is the more convenient forum for the witnesses and for both parties and notes that Roku has no connection to this district. (*Id.*).

On January 18, 2024, the parties then filed a joint motion to conduct limited, expedited venue discovery before completing the briefing on the motion to transfer, (Joint Mot. Venue Disc., Dkt. 20), which the Court granted on January 22, 2024, (Order, Dkt. 23). On March 20, 2024, AMR filed a Motion to Compel Venue Discovery Responses, (Dkt. 37), which was referred to United States Magistrate Judge Mark Lane for disposition. On April 30, 2024, United States Magistrate Judge Mark Lane held a hearing on AMR's motion to compel, (Min. Entry, Dkt. 53), and granted in part and denied in part the motion, (Dkt. 52). Following this discovery dispute, on May 31, 2024, AMR filed a response in opposition to the motion to transfer, arguing that none of the public or private interest factors weigh in favor of transfer. (Dkt. 56; *see also* Sealed Version, Dkt. 57-1). On June 14, 2024, Roku filed a reply. (Dkt. 60). On June 21, 2024, AMR filed a Motion to Strike Untimely Evidence and Arguments in Defendant Roku Inc's Reply in Support of its Motion to Transfer. (Dkt. 61). On June 26, 2024, Roku filed a response in opposition, (Dkt. 62), and on July 3, 2024, AMR filed a reply, (Dkt. 63; *see also* Sealed Version, Dkt. 64-1).

## II. LEGAL STANDARD

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court

2

turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative." *In Re: Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen*

*II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. DISCUSSION OF THE MOTION TO STRIKE

After briefing on the motion to transfer concluded, AMR filed a Motion to Strike Untimely Evidence and Arguments in Defendant Roku Inc's Reply in Support of its Motion to Transfer. (Dkt. 61). AMR asks the Court to: (1) strike four declarations provided by Roku employees that are attached to Roku's reply to the motion to transfer, and (2) disregard Roku's arguments regarding eight potential California-based Roku employees described in the declarations. (Mot. Strike, Dkt. 61, at 1–2). In response, Roku argues that it did not make any new arguments in its reply, but rather, it expanded on its arguments in the motion to transfer and responded to arguments that AMR made in its response to the motion to transfer. (Strike Resp., Dkt. 62, at 1).

The Court disagrees with AMR. Parties are permitted to submit evidence and arguments in a reply brief "to rebut a new argument raised by the opposing party in a response." *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. 18-CV-00039, 2020 WL 4708714, at *2 (W.D. Tex. July 13, 2020). Roku argues from the outset in its motion to transfer that venue is proper in the NDCA because the witnesses and evidence are located there and in South Korea. (*See* Mot. Transfer, Dkt. 19). In its reply brief, Roku expands upon that argument and provides more detail regarding the relevant Roku witnesses. (*See* Transfer Reply, Dkt. 60). Roku includes declarations and evidence about new witnesses to rebut AMR's characterization of Roku's witnesses in AMR's response to the motion to transfer. (*See* Transfer Resp., Dkt. 56; *see also* Sealed Version, Dkt. 57-1). Accordingly, the declarations and evidence are proper rebuttals to AMR's response.

Further, AMR is not prejudiced by the declarations or evidence. Here, the parties engaged in venue discovery after the motion to transfer was filed—to which AMR agreed, (*see* Joint Mot. Venue Disc., Dkt. 20)—before submitting their responsive briefing. Thus, AMR was able to obtain venue

4

discovery before filing its response to the motion to transfer, which helped it prepare its best response. It would be unfair, on the other hand, to deny Roku the opportunity to reply to AMR's new arguments in the response, which are in part based on venue discovery that occurred after Roku filed the motion to transfer. *See C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. PE:18-CV-00039-DC-DF, 2020 WL 4708714, at *2 (W.D. Tex. July 13, 2020) (declining to strike declarations where "the 'new arguments' that [defendant] seeks to strike are simply rebuttals to evidence that [defendant] itself introduced"). Accordingly, the Court will deny AMR's motion to strike.

## IV. DISCUSSION OF THE MOTION TO TRANSFER

### A. Whether the Case Could Have Been Brought in the NDCA

"The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). Roku has demonstrated that venue and jurisdiction would have been proper in the NDCA. Roku is subject to personal jurisdiction in California because its headquarters is in the NDCA, (Mot. Transfer, Dkt. 19, at 5), and a substantial portion of the events at issue give rise to venue in the NDCA. Therefore, the preliminary question is satisfied.

### B. Private Interest Factors

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The Court will address each factor in turn.

1. Relative Ease of Access to Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *WAG Acquisition, L.L.C. v. Google LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *3 (W.D. Tex. Oct. 5, 2022). In "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345).

Roku alleges that, as the accused infringer, it likely will possess more of the relevant documents in this case, which it contends will be located at Roku's headquarters in the NDCA and in Seoul, South Korea. (Mot. Transfer, Dkt. 19, at 6–7). Roku also alleges that its cloud servers (where it stores its documents) and its "Trust Engineering" team (which handles source code discovery in litigation) are both located in the NDCA. (*Id.* at 7). Roku further alleges that AMR has no presence in the Western District of Texas (the "WDTX"), so its documents are likely in the NDCA with co-inventor/co-founder Christopher Otto ("Otto") or New York with co-inventor/co-founder Jonathan Steuer ("Steuer"). Accordingly, Roku asserts that this factor favors transferring this case to the NDCA.

In response, AMR contends that because most evidence is electronic, it will be equally accessible from either district. (Transfer Resp., Dkt. 56, at 10–12). AMR also argues that there is a piece of evidence only accessible from Austin and "a nearly twenty-year old Anonymous Media hard drive can only be inspected in New York, which is closer to Texas than California." (*Id.* at 11). Accordingly, AMR contends that this factor is neutral or weighs against transfer.

The Court finds that the ease of access factor strongly favors transferring this case to the NDCA. First, it is the location of the defendant's documents that primarily informs the Court's analysis of this factor. *In re Nintendo*, 589 F.3d at 1199; *In re Apple Inc.*, 979 F.3d at 1340. Because Roku is headquartered in the NDCA and the technologies at issue were mainly designed and developed in the NDCA or in South Korea, the Court finds that it is likely that more of Roku's relevant documents will be located in the NDCA than this district. Further, because AMR is not located in this district, it is exceedingly unlikely that AMR has relevant documents in this district, and the fact that one old hard drive is located outside of either district has no bearing on the Court's analysis.

Second, the fact that most evidence is electronic does not mean that access is uniform in each district. *See WAG Acquisition, L.L.C. v. Google LLC*, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022) (citing *In re Apple Inc.*, 2022 WL 1196768, at * 4 (Fed. Cir. Apr. 22, 2022)); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("electronic storage of documents . . . does not make the sources-of-proof factor irrelevant"). Roku has noted that its cloud servers (where it stores its documents) and its "Trust Engineering" team (which handles source code discovery in litigation) are both located in the NDCA. Thus, access to electronic evidence will still likely be easier in the NDCA than in this district. Because of a lesser "ease of access in the Western District of Texas *relative* to the ease of access in the Northern District of California," this factor weighs in favor of transfer. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021).

Third, while AMR argues that Roku will have some documents in the WDTX, Roku has stated that none of its relevant documents are located in this district. Roku has presented strong evidence that the relevant evidence is located in the NDCA or in Seoul, while AMR points only to

7

the fact that Roku may have one specific piece of evidence in this district.[1] Accordingly, this factor weighs strongly in favor of transfer.

2. Availability of Compulsory Process to Secure Attendance

This factor focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). "When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). A court may subpoena a witness to attend trial only (A) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (B) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

Roku contends that "there are significant third-party sources of prior art evidence located in NDCA," including Shazam Entertainment ("Shazam") and Audible Magic ("Audible"). (Mot. Transfer, Dkt. 19, at 8). Specifically, Roku contends that (1) Shazam, which was purchased by Apple, Inc. (based in the NDCA), has two co-inventors located in the NDCA, and (2) Audible is based in the NDCA. (*Id.* at 8–9). Accordingly, Roku asserts that this factor favors transferring this case to the NDCA. In response, AMR argues that Roku doesn't intend to call any prior art witnesses to testify at trial. (Transfer Resp., Dkt. 56, at 13). AMR also argues that Roku has two former employees who are likely to be called at trial and are subject to the WDTX's subpoena power. (*Id.* at 13–14). In addition, AMR lists three Roku engineers located in Austin. (*Id.* at 5). AMR also cites to a number of

---

[1] Further, Roku contests AMR's characterization of this piece of evidence as being only accessible in Austin. To the contrary, Roku indicates that this evidence is accessible electronically via a remotely accessible database. (Transfer Reply, Dkt. 60, at 9).

8

purported witnesses located well over 100 miles from either district, located in the United Kingdom, New York, and Boston. (*Id.* at 6–9). Accordingly, AMR asserts that this factor weighs against transferring this case to the NDCA. In reply, Roku asserts that neither of the two witnesses located in the WDTX that AMR identifies are likely witnesses. (Transfer Reply, Dkt. 60, at 4). Roku also contests the relevance and convenience of the other witnesses AMR lists. (*Id.* at 5–6).

The Court finds that this factor weighs slightly in favor of transfer. Roku has identified two potential third-party sources of prior art evidence, including at least two witnesses who would be subject to compulsory process in the NDCA. While AMR contests the relevance and likelihood of their testimony, the Court finds that it is likely that they will testify, as Roku seeks to invalidate the Asserted Patents in part on the basis of the prior art. Meanwhile, while AMR has identified two former Roku employees in this district, Roku has both disputed their relevance and provided seven potential witnesses located in the NDCA who would have more information than the two that AMR presented.[2] Further, the Court notes that any witnesses located outside of either district are irrelevant to its analysis, as the United Kingdom, New York, and Boston are well beyond the subpoena power of either district. Accordingly, because the NDCA has more subpoena power over potential third-party witnesses than this Court, this factor weighs slightly in favor of transfer. *In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) (citing *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

### 3. Cost of Attendance

The cost of attendance focuses on willing witnesses, and the factor considers both party and non-party witnesses. *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204). This factor is often considered

---

[2] The Court notes that any discussion of current employees is irrelevant to its analysis, as current company employees are considered party witnesses. *See In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021).

9

the most important factor to be considered in deciding whether to transfer venue. *Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (citing *AT&T Intell. Prop. I L.P. v. Airbiquity Inc.*, No. 3:08–CV–1637–M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009)). The Fifth Circuit employs a "100-mile rule" which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has stated that courts should not apply the rule rigidly if witnesses will have to travel a significant distance regardless of the venues at stake. *In re Apple*, 979 F.3d at 1342.

Roku argues that a number of likely Roku witnesses are located in the NDCA—and over 1,500 miles away from this district—while a number of other likely witnesses are located in South Korea. (Mot. Transfer, Dkt. 19, at 10). On the other hand, Roku argues, no likely witnesses exist in this district. (*Id.* at 10–11). And, Roku argues, AMR's likely witnesses will only be slightly more inconvenienced by traveling to the NDCA than to the WDTX. (*Id.* at 11). Accordingly, Roku argues that this factor strongly favors transfer. In response, AMR argues that there are four witnesses in this district who would have to travel to the NDCA were transfer granted. (Transfer Resp., Dkt. 56, at 14–15). AMR also argues that the NDCA is farther away from the WDTX for potential witnesses located in the United Kingdom, New York, and Boston. (*Id.* at 15). Therefore, AMR contends that this factor weighs against transfer.

As already noted, all of the likely witnesses are located outside of the WDTX, while a number of likely witnesses are located in the NDCA. AMR has failed to meaningfully refute Roku's contention that that the vast majority of Roku's likely witnesses are located in the NDCA, not in this district. There is no reason to think that the Roku witnesses in this district that AMR identified will provide any relevant testimony. Further, a number of witnesses are located outside of either district,

10

with a number of Roku's likely witnesses located in South Korea, which is closer to the NDCA than the WDTX. While AMR identifies potential witnesses located in the United Kingdom, New York, and Boston, in light of the higher number of likely witnesses located in the NDCA and South Korea, the burden on these potential East Coast and European witnesses is less than the burden on the witnesses located in the NDCA and South Korea. Further, the witnesses of the alleged infringer are more important than those of the party alleging infringement. Because many relevant witnesses are located within the NDCA or outside of either district, while few, if any, likely witnesses are located in this district, this "most important factor" weighs strongly in favor of transfer.

### 4. Other Problems

"When considering the private interest factors, courts must also consider all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Roku argues that this factor favors transfer, as Roku is headquartered in the NDCA and because this case is in its early stages. (Mot. Transfer, Dkt. 19, at 12). On the other hand, AMR argues that this factor is neutral. (Transfer Resp., Dkt. 56, at 18–19). The Court agrees with AMR. Previously, this Court has considered delays in requesting transfer or related litigation in the transferee or transferor court when analyzing this factor. *See, e.g., Umbra Techs. Ltd. v. VMware, Inc.*, No. 1:23-CV-904-DII, 2024 WL 1123592, at *5 (W.D. Tex. Mar. 13, 2024). This case is in its early stages, but Roku has not argued why this fact alone would make trial in this case easier, more expeditious, and less expensive in the NDCA than in this district. Neither party has alleged that there is related pending litigation that would affect the ease or expense of trying this case in one court or another. Accordingly, this factor is neutral, as there are no material problems weighing for or against transfer.

### C. Public Interest Factors

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity

11

with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. The Court will address each factor in turn.

### 1. Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The relevant inquiry under this factor is the "speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343 (citations omitted). This factor is "the most speculative" and is given little weight compared to the other transfer factors. *XR Commc'ns*, 2022 WL 3702271, at *9 (citing *In re Genentech*, 566 F.3d at 1347). The Federal Circuit recently "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple*, 2021 WL 5291804, at *4 (quoting *In re Juniper Networks*, 14 F.4th at 1322). Roku contends that this factor slightly favors transfer or is neutral, based primarily on an argument that "this case is presently on the docket of the vacant judgeship (Judge Docket II), which adds uncertainty as to how quickly this case would proceed to trial in this District." (Mot. Transfer, Dkt. 19, at 15). In response, AMR argues that this factor should be treated as neutral because it involves a non-practicing entity plaintiff. (Transfer Resp., Dkt. 56, at 19).

First, as to Roku's argument, the Court notes that the DII docket is overseen and managed by the undersigned, and the cases on the DII docket are handled just the same as cases on the RP docket.[3] Accordingly, this case's assignment to the DII docket will not affect the progression of this case—though the Court notes that the Austin division of this district has a particularly heavy civil caseload, as the undersigned has over 900 active civil cases and is the only active district judge in Austin.

---

[3] *See* Order Assigning the Business of the Court, https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Amended-Order-Assigning-Business-of-the-Court-053124.pdf.

Second, the Court agrees with AMR. Because AMR is a non-practicing entity, it "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Accordingly, this factor should not be assigned any weight.

### 2. Local Interest

Under this factor, courts evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. The factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (internal citations omitted). While Roku has a general presence in this district because of an office in Austin, the Court finds that the NDCA has a much greater local interest in this case because Roku is headquartered there and the technologies at issue were developed in part in the NDCA (as well as in South Korea). Additionally, a number of likely witnesses are located in the NDCA. Accordingly, the NDCA has a cognizable interest in having the allegations brought against local companies decided in that district. Moreover, AMR has no interest in litigating in this district, as it has not contended that it has any connection to this district. Overall, this factor weighs strongly in favor of transfer.

### 3. Familiarity with the Law and 4. Conflict of Laws

Both parties agree that these factors are neutral. (Mot. Transfer, Dkt. 19, at 14; Transfer Resp., Dkt. 56, at 20). AMR alleges violations only of federal patent law, and there are no issues involving conflict of foreign laws. Accordingly, these two factors weigh in neither direction.

### D. Conclusion

For the reasons discussed above, the factors weigh overwhelmingly in favor of transfer. Three factors—the relative ease of access to proof, the cost of attendance, and the local interest—all

weigh strongly in favor of transfer. One factor—the availability of compulsory process—weighs slightly in favor of transfer. Four factors—court congestion, familiarity of law, conflict of law, and miscellaneous problems—are neutral. No factor weighs in favor of keeping venue in the Western District of Texas. Therefore, because venue is clearly more convenient in the Northern District of California, the Court will grant Roku's motion to transfer.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Roku's motion to transfer, (Dkt. 19), is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** to the Northern District of California.

**SIGNED** on July 10, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE